**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MIGUEL ANGEL CORONEL MARTINEZ and
JESSICA CAMARDA, on behalf of themselves,
FLSA Collective Plaintiffs, and the Class,

                              Plaintiffs,                                    **REPORT AND**
                                                                             **RECOMMENDATION**

              - against -                                                    CV 13-7411 (LDW) (AKT)

AYKEN, INC., doing business as Ayhan's Fish
Kebab, AYHAN'S SHISH-KEBAB OF BALDWIN
INC., doing business as Ayhan's Mediterranean
Restaurant, SHISH KEBAB SNACK BAR, INC.,
doing business as Ayhan's Mediterranean
Restaurant, AYHAN'S SHISH KEBAB
INTERNATIONAL CORP., doing business as
Ayhan's Mediterranean Restaurant, GREAT NECK
ASK, INC., doing business as Ayhan's
Mediterranean Restaurant, CYPRUS GRILL, LLC,
doing business as Ayhan's Mediterranean Restaurant,
293 MEDITERRANEAN MARKET CORP., doing
business as Ayhan's Mediterranean Marketplace and
Café, AYHAN'S SHISH-KEBAB RESTAURANTS
OF ROCKVILLE CENTRE, INC., doing business as
Ayhan's Pita Express, AYHAN'S SHISH-KEBAB
EXPRESS, INC., doing business as Ayhan's Pita
Express, and AYHAN HASSAN,

                              Defendants.
--------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

              Plaintiffs Miguel Angel Coronel Martinez ("Martinez") and Jessica Camarda

("Camarda") (collectively, "Plaintiffs") bring this action on behalf of themselves and all

similarly situated persons seeking unpaid overtime compensation from Ayken, Inc. d/b/a

Ayhan's Fish Kebab, Ayhan's Shish-Kebab of Baldwin, Inc. d/b/a Ayhan's Mediterranean

Restaurant, Shish Kebab Snack Bar, Inc. d/b/a Ayhan's Mediterranean Restaurant, Ayhan's Shish Kebab International Corp. d/b/a Ayhan's Mediterranean Restaurant, Great Neck Ask, Inc. d/b/a Ayhan's Mediterranean Restaurant, Cyprus Grill, LLC d/b/a Ayhan's Mediterranean Restaurant, 293 Mediterranean Market Corp. d/b/a Ayhan's Mediterranean Marketplace and Café, Ayhan's Shish-Kebab Express, Inc. d/b/a Ayhan's Pita Express, Ayhan Hassan ("Hassan"), and Ayhan's Shish-Kebab Restaurants of Rockville Centre, Inc. d/b/a Ayhan's Pita Express (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL").

Plaintiffs have moved for class certification of their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. *See* DE 67. Defendants oppose the motion asserting that Plaintiffs have failed to meet the requirements of Rule 23. *See* DE 72. Based upon the Court's review of the parties' submissions, as well as the applicable case law, this Court respectfully recommends to Judge Wexler that Plaintiffs' motion for class certification be GRANTED for the reasons set forth below.

II.   FACTUAL BACKGROUND

A.  Structure and Operation of Defendants' Restaurant Enterprise

The following alleged facts are taken from the Complaint [DE 1], the declarations submitted in support of Plaintiffs' motion for class certification as well as deposition testimony from Defendant Ayhan Hassan. *See generally* DE 67, Ex. A, DE 70, DE 71.

Defendant Ayhan Hassan owns and operates a string of Mediterranean restaurants using the common trade name "Ayhan's." Complaint ("Compl.") ¶ 8. Although each of Hassan's restaurants is organized as a separate corporate entity, *see* Compl. ¶ 6, Defendant Hassan is the sole shareholder and president of each individual corporation. *Id.* ¶ 7; October 30, 2014

Deposition of Ayhan Hassan ("Hassan Dep.") [DE 68, Ex. A], at 10; December 12, 2014 Declaration of Miguel Martinez ("Martinez Decl.") [DE 70], at ¶ 2; December 12, 2014 Declaration of Jessica Camarda ("Camarda Decl.") [DE 71], at ¶ 2.  In addition, with the exception of Ayhan's Pita Express located in East Meadow, New York, Hassan is the owner and operator of all restaurants bearing the "Ayhan's" trade name.  *See* Hassan Dep. at 11-12; Compl. ¶¶ 7-8.

As owner and operator, Hassan is empowered to hire and fire employees, set pay rates, determine work schedules and supervise restaurant managers.  Compl. ¶¶ 7, 9; Martinez Decl. ¶ 2, Camarda Decl. ¶ 3.  In addition, Hassan has the authority to place bulk orders for certain food products, *see* Hassan Dep. at 27, 29, and enter in contracts for common services spanning all of his restaurants, such as for payroll computing and credit card processing.  *Id*. at 24, 33. Further, in order to ensure proper oversight of each restaurant, Hassan visits each establishment at least once or twice per week.  *Id*. at 31.

In short, Plaintiffs assert that based upon the structure and management of each restaurant, "Ayhan Restaurants are operated as a single enterprise under common ownership and management of Mr. Hassan."  Martinez Decl. ¶ 2, Camarda Decl. ¶ 2, Compl. ¶¶ 8-9.  Plaintiffs point to the following additional facts underscoring this assertion:  (1) a common uniform is used across all of Defendants' restaurants, *see* Hassan Dep. at 74-75; (2) payroll and records management are facilitated from a centralized office, *see id*. at 19; (3) the same employment application and personnel manual are used across all restaurants, *see id*. at 35-36; (4) the same third-party payroll contractor is used, *see id*. at 23; (5) the parent website makes reference to all Ayhan branded restaurants, *see* DE 68, Ex. B (containing printouts of web pages from www.ayhanrestaurants.com), and includes coupons that are redeemable at any of Defendants'

restaurants, *see id*. at 83; and (6) a centralized catering manager is used for all event bookings. *See* DE 68, Ex. D (Catering Menu from Defendants' Website).

**B. Named Plaintiffs' Employment**

*1. Miguel Martinez*

In January 2003, Plaintiff Miguel Martinez was hired by Defendants to work at Ayhan's Shish Kebab Mediterranean Restaurant and Ayhan's Fish Kebab Restaurant in Port Washington, New York.  Compl. ¶ 24; *see* Martinez Decl. ¶ 1.  From the beginning of his employment until on or about August 2009, Martinez was employed as a kitchen worker (food preparer, salad preparer, dishwasher).  Compl. ¶ 24.  During this period, Martinez had a regular weekly work schedule of 9 a.m. to 10 p.m. one day per week, 10 a.m. to 1 p.m. three days per week, and 10 a.m. to 11 p.m. two days per week.  Compl. ¶ 25.  Martinez was compensated at a rate of $5.50 per hour during this period of employment.  *Id*.

In August 2009, Martinez was employed by Defendants as a busboy, which was a tipped position.  *Id*.; Martinez Decl. ¶ 1.  From August 2009 to August 2012, Martinez's regular weekly work schedule was  9 a.m. to 10 p.m. on Mondays, 10 a.m. to 4 p.m. on Wednesdays, 10 a.m. to 10 p.m. on Thursdays, 5 p.m. until 11 p.m. on Fridays, 11 a.m. until 12 a.m. on Saturdays, and 10 a.m. to 11 p.m. on Sundays.  Compl. ¶ 25.  Beginning in August 2012, Martinez worked a schedule of 9 a.m. to 10 p.m. on Mondays, 11 a.m. to 10 p.m. on Thursdays, 5 a.m. to 11 p.m. on Fridays, 11:30 a.m. to 12 a.m. on Saturdays, and 12 p.m. to 10 p.m. on Sundays.  *Id*.  Martinez claims that he was compensated at a base hourly rate of $5 during this latter period of employment.  *Id*.

4

### 2.      *Jessica Camarda*

In December 2011, Plaintiff Jessica Camarda was hired as a waitress at Defendants'

Ayhan's Shish Kebab Mediterranean Restaurant located in Westbury, New York.  Compl. ¶ 26;

Camarda Decl. ¶ 1.  From the time she began her employment until her termination in May 2012,

Camarda had a weekly work schedule between 4 and 6 days per week.  Compl. ¶ 27.  On

weekdays, Camarda worked from 4 p.m. until 10 p.m. and on weekends from 4 p.m. until 11

p.m.  *Id.*  In addition, at least once per week, Camarda was required to work an additional 1-2

hours.  *Id.*  During her term of employment with Defendants, Camarda was "orally informed her

base hourly rate was $4.00 per hour, however her paystubs incorrectly listed a base hourly rate of

$5.00 per hour."  *Id.*; Camarda Decl. ¶ 6.

### C.      **Defendants' Payment Practices**

Plaintiffs allege a number of grievances with respect to Defendants' payroll and payment

practices.  First, Plaintiffs claim that they were paid at hourly rates below both the standard and

tipped minimum wage during their employment and that it was "Defendants' policy to pay below

the statutory minimum wage rate to all tipped employees at each of the Ayhan Restaurants."

Martinez Decl. ¶ 4; Camarda Decl. ¶¶ 5-6; Compl. ¶¶ 31, 64.  Plaintiffs assert that they have

knowledge of this policy based upon their own personal observations and information they

received from tipped employees working at other Ayhan Restaurant locations. Martinez Decl. ¶

4; Camarda Decl. ¶ 5.

Second, Plaintiffs maintain that despite "regularly work[ing] over forty hours per week,

Defendants never paid them at the required overtime premium rate."  Compl. ¶ 32; Martinez

Decl. ¶ 5; Camarda Decl. ¶ 7.  In addition, Plaintiffs contend that other tipped employees who

worked more than forty hours per week were similarly paid incorrect overtime wages.  Martinez

Decl. ¶ 5; Camarda Decl. ¶ 7.

Third, despite regularly working in excess of ten hours in a day, Plaintiffs maintain that

they were never paid the required "spread-of-hours" premium.  They observed that other Ayhan

Restaurant employees also never received a "spread-of-hours" premium for workdays exceeding

ten hours in duration.  Martinez Decl. ¶ 8; Compl. ¶¶ 33, 44, 67.  Because employees were

"required to clock out approximately 8 hours into their scheduled shifts, but [were directed to]

continue to work off the clock," employees did not receive the "spread-of-hours" premium.  *See*

Compl. ¶¶ 37, 42, 44. As a further consequence of Defendants' alleged "time shaving policy," all

non-exempt employees experienced a reduction in their wages, and, as a consequence, their

"total pay does not reflect the actual hours that they worked."  *Id*. ¶¶ 37, 43.

Fourth, Plaintiffs claim that Defendants required their employees to "pool" tips which

were received and then divide them among all tipped employees.  Martinez Decl. ¶ 9.  According

to Martinez, "[e]mployees were arbitrarily assigned a tip percentage at the discretion of

managers [and] employees did not have the right to challenge their allocated percentage."  *Id*.;

Camarda Decl. ¶ 8.  This tip pooling arrangement, according to Plaintiffs, was thus "controlled

by Defendants and [was] not agreed to by tipped employees."  Martinez Decl. ¶ 9; Camarda

Decl.  ¶ 8; Compl. ¶ 34.  Plaintiffs allege that this system enabled Defendants to "illegally retain

a portion of the tips received [by employees]."  Compl. ¶ 34.

Fifth, Plaintiffs state that they were not provided with notice of Defendants' intent to take

a tip credit and were likewise not apprised of the amount of their tipped minimum wage and

overtime rate.  Martinez Decl. ¶ 6; Camarda Decl. ¶ 8; Compl. ¶ 35.  Further, Plaintiffs observed

that notice had not been provided to other tipped employees at their place of employment and

they received information from employees working at other Ayhan Restaurant locations that notice had similarly not been provided to those employees.  Martinez Decl. ¶ 6; Camarda Decl. ¶ 8.

Sixth, Plaintiffs claim that despite being tipped employees, they were "required to engage in non-tipped related work . . . for more than two hours or twenty percent of [their] daily [shift]" and that based upon their independent observations and conversations, this practice extended to all tipped employees employed by Ayhan Restaurants.  Martinez Decl. ¶ 7; Camarda Decl. ¶ 9; Compl. ¶ 36.

In addition to the above information, Plaintiffs also claim that Defendants improperly claimed a meal credit on behalf of employees, *see* Compl. ¶ 45; Camarda Decl. ¶ 10, failed to provide proper wage and hour notices, *see* Compl. ¶ 46; Martinez Decl. ¶ 10; Camarda Decl. ¶ 11, and issued wage statements which were not in compliance with New York law.  Compl. ¶¶ 46, 69; Martinez Decl. ¶ 11; Camarda Decl. ¶ 12.

## III.   <u>Relevant Procedural History</u>

Plaintiffs filed their Complaint on December 31, 2013.  *See generally* DE 1.  Defendants interposed an Answer on February 28, 2014.  *See* Answer [DE 11].  On April 25, 2014, Plaintiffs filed a motion for conditional certification, pursuant to 29 U.S.C. § 216(b).  *See* Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) [DE 19].  Defendants served their opposition to Plaintiffs' motion on May 12, 2014.  *See* Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional FLSA Certification [DE 34].  Plaintiffs served a reply on June 4, 2014.  Plaintiffs' Reply Memorandum of Law in Support of Conditional Collective Certification pursuant to 29 U.S.C. § 216(b) [DE 33].

After Plaintiffs' motion was fully-briefed, Defendants filed letter applications dated October 31, 2014 and November 17, 2014, respectively, requesting the Court's permission to supplement the record with selected excerpts from Plaintiffs' depositions. *See* DE 49, 52. The Court granted Defendants' application to supplement the record in an Electronic Order issued on February 25, 2015. *See* Feb. 25, 2015 Electronic Order. In that same Order, the Court gave Plaintiffs leave to respond to the supplemental submissions by offering selected excerpts from their deposition of corporate principal Ayhan Hassan. *Id.* Plaintiffs submitted the relevant excerpts from the Ayhan Hassan deposition on February 26, 2015. *See* DE 62. On March 27, 2015, the Court granted Plaintiffs' motion for conditional certification pursuant to Section 216(b) and permitted Plaintiffs to disseminate the Notice of Pendency and Consent to Join form in accordance with the directives contained in the Court's Memorandum and Order. *See* DE 64.

On May 4, 2015, the parties filed their fully briefed motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure for the claims arising under the NYLL. *See* DE 67, 72, 74. The Court now turns to the instant motion.

## IV.   LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)) (internal quotations omitted). "To establish that the exception is applicable to a given case, 'a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23.'" *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *11 (E.D.N.Y. Sept. 16, 2014) (quoting *Comcast*, 133 S. Ct. at 1432) (internal quotations omitted). "The party seeking class

certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Class certification pursuant to Rule 23 requires a two-step analysis. First, "the court must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *see Perez*, 2014 WL 4635745, at *13 (recognizing that in considering a Rule 23 motion, a court employs a two-step analysis). The prerequisites of Rule 23(a) are as follows:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). "Once a court has concluded that Rule 23(a)'s four requirements have been satisfied, it must then proceed to the second step, *i.e.*, determine 'whether the class is maintainable pursuant to one of the subsections of Rule 23(b).'" *Perez*, 2014 WL 4635745, at *13 (quoting *Vivendi*, 242 F.R.D. at 83); *see also Comcast*, 133 S. Ct. at 1432 (noting that, in addition to satisfying Rule 23(a)'s requirements, a party "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)").

"Generally speaking, Rule 23(b) addresses the types of relief available, as well as the rights of absent class members." *Perez*, 2014 WL 4635745, at *13 (citing Fed. R. Civ. P. 23(b)).

In this case, Plaintiffs seek certification under Rule 23(b)(3).  *See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Pls.' Mem.") [DE 68], at 23.  This provision requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

When considering whether Rule 23's requirements have been met, the United States Supreme Court has instructed courts that it "may be necessary for [them] to probe behind the pleadings before coming to rest on the certification question," and, further, "that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, ——, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting *Falcon*, 457 U.S. at 160–61) (internal quotations omitted).  This analysis often will "overlap with the merits of the plaintiff's underlying claim," as questions concerning class certification may be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.* (quoting *Falcon*, 457 U.S. at 160) (internal quotations omitted).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (internal quotations and citation omitted).  That is, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* at 1195. Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (quoting

*Kowalski v. YellowPages.com, LLC*, 10 Civ. 7318, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012)).

Although the Court's analysis in the class certification context must be "rigorous," courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters.*, 298 F.R.D. at 66 (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012); *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). Indeed, "[c]ourts in this Circuit have displayed 'a preference for granting rather than denying class certification.'" *Morris v. Alle Processing Corp.* ("*Morris I*"), No. 08-CV-4874, 2013 WL 1880919, at *5 (E.D.N.Y. 2013) (quoting *Gortat v. Capala Bros.* ("*Gortat I*"), 257 F.R.D. 353, 361 (E.D.N.Y. 2009)); *see Marisol A. v. Giuliani*, 126 F.3d 372, 277 (2d Cir. 1997). "Moreover, 'where a collective action under the FLSA that is based on the same set of facts has been approved there is an inclination to grant class certification of state labor law claims.'" *Morris I*, 2013 WL 1880919, at *5 (quoting *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 104–05 (E.D.N.Y. 2011)); *see Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.") (collecting cases).

## V.  DISCUSSION

### A.  Rule 23(a) Prerequisites

#### 1.  *Numerosity*

Rule 23(a)(1) permits a class action only when the "class is so numerous that joinder of all members is impracticable." "Impracticable does not mean impossible," *Robidoux v. Celani*,

987 F.2d 931, 935 (2d Cir.1993); rather, "Rule 23(a)(1) only requires that, in the absence of a

class action, joinder would be 'simply difficult or inconvenient.'" *Spread Enters.*, 298 F.R.D.

at 67 (E.D.N.Y. 2014) (quoting *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 294 (D. Conn.

2001); *see also Casale v. Kelly*, 257 F.R.D. 396, 405 (S.D.N.Y. 2009).

   The Second Circuit has held that "numerosity is presumed at a level of 40 members."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *see, e.g.*, *Perez*, 2014

WL 4635745, at *14; *Garcia*, 281 F.R.D. at 104.  "'As plaintiff bears the burden of

demonstrating numerosity, he must show some evidence of or reasonably estimate the number of

class members.'" *Spread Enters.*, 298 F.R.D. at 67 (quoting *Russo*, 201 F.R.D. at 295).

However, courts also "are empowered to make common sense assumptions to support a finding

of numerosity.'" *Morris I*, 2013 WL 1880919, at *7 (quoting *Nicholson v. Williams*, 205 F.R.D.

92, 98 (E.D.N.Y. 2001) (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 394

(N.D.N.Y. 2011) ("[P]laintiffs may rely on reasonable inferences drawn from the available facts

to estimate the size of the class.")).  "In wage and hours cases, courts 'assess the numerosity

requirement based on the size of the proposed class rather than the number of opt-in plaintiffs.'"

*Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255, 2013 WL 2395288, at *4 (E.D.N.Y.

May 31, 2013), *report and recommendation adopted by* 2013 WL 4647494 (E.D.N.Y. Aug. 29,

2013) (quoting *Guan Ming Lin v. Benihana New York Corp.*, 10 CIV. 1335, 2012 WL 7620734,

at *4 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted by* 2013 WL 829098

(S.D.N.Y. Feb. 27, 2013)).

   Plaintiffs assert that numerosity is met in this case since:  (1) Defendants "conceded that

approximately ninety non-exempt employees were employed at Ayhan Restaurants," including

forty-two tipped employees.  Pls.' Mem. at 17; Hassan Dep. at 14-19 (estimating the number of

12

non-exempt employees at each of Defendants' restaurants); (2) Defendants estimated annual employee turnover at thirty percent "meaning that there [are] approximately 150 additional employees that worked at Ayhan Restaurants in the last six years."  Pls.' Mem. at 17-18 (parenthetical omitted); Hassan Dep. at 36; and (3) an employee list provided during discovery contains "the names and positions of 382 tipped employees" working at Ayhan Restaurants. *See* Pls.' Mem. at Ex. J (consisting of a list, dated July 2014, showing tipped employees along with each employee's position).

Defendants respond that the ultimate issue in determining whether numerosity has been met is "whether joinder is practicable."  Defendants Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Defs.' Opp'n") [DE 72] at 4.  Therefore, Defendants argue that since the "[p]utative class members are easily identifiable and not so geographically dispersed so as to make joinder difficult" joinder is feasible and hence the numerosity requirement has not been met.  *Id*. at 4-5 (relying on *LeGrand v. New York City Transit Auth.*, No. 95-CV-0333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999).  Further, Defendants assert that the FLSA collective action will permit "the same relief that may be attained via class action" and that Plaintiffs have erroneously included employees who "are outside the putative class in order to satisfy the amount of potential class members," thereby militating against a finding of numerosity.  *Id*. at 5.

In their reply, Plaintiffs state that:  (1) the Second Circuit has presumptively found numerosity to be met where at least 40 individuals can be identified as part of a class; (2) the class consists of "at least 240 non-exempt employees" based upon Defendant Hassan's own deposition testimony; (3) since being issued FLSA conditional certification, Defendants have produced "a list of 414 non-exempt employees who worked for Defendants . . . during the last

six years"; (4) courts within this district have "repeatedly held that plaintiffs in wage and hour cases have satisfied the numerosity requirement based solely on the large number of the proposed class members"; (5) the large number of potential class members could result in multiple redundant individual lawsuits; (6) potential class members are of limited financial means "making individual actions difficult to pursue" and (7) Defendants have conflated the scope of the class in Plaintiffs' FLSA collective action, which includes only tipped employees, with the broader class sought in the instant motion, which encompasses all non-exempt employees and that joinder is therefore impracticable.  Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Pls.' Reply") [DE 74] at 4-8.

As noted, the Second Circuit has held that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp*, 47 F.3d at 483; s*ee Garcia*, 281 F.R.D. at 105; *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 WL 597186, at *5 (E.D.N.Y. Mar. 2, 2008) ("A class comprised of more than forty members generally satisfies numerosity.") (internal citation omitted).  In the instant case, Plaintiffs have proffered credible evidence that the potential class, consisting of all non-exempt employees, significantly exceeds that threshold.  *See* Pls.' Mem.,   Ex. J; Hassan Dep. 14-19, 36.  In addition, in the context of wage and hour actions, courts "assess the numerosity requirement based on the size of the proposed class," *Rosario*, 2013    WL 2395288, at *4, and where, as here, an FLSA collective class has already been conditionally certified and is based upon the same set of facts, "there is an inclination to grant class certification of state labor law claims." *Garcia*, 281 F.R.D. at 105 (internal citation omitted);  *see Damassia*, 250 F.R.D. at 163 (collecting cases).

Although Defendants rely on *LeGrand* to attack the sufficiency of Plaintiffs' showing with respect to numerosity, such reliance is misplaced since *LeGrand* is distinguishable.   First, *LeGrand* did not involve an action brought pursuant to the FLSA and NYLL, but was instead based upon claims arising under Title VII and 42 U.S.C. § 1983.  *See LeGrand*, 1999 WL 342286, at *1.  Second, the court in *LeGrand* specifically stated that "plaintiffs failed to proffer sufficient evidence to permit a reasonable estimate [of the size of the] proposed class" but instead relied upon a "naked assertion with no factual support. . . ."  *Id*. at 4.  Third, in analyzing secondary factors, the court in *LeGrand* concluded that plaintiffs:  (1) "did not lack the financial resources necessary to render joinder impracticable"; and (2) harbored claims that differed "significantly" from one another.  *Id*.  5.

Taking the case law into consideration, and after reviewing the evidence and the parties' submissions, the Court concludes that Plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.  Plaintiffs assert that their potential class includes "at least 240 non-exempt emoloyees."  Pls.' Reply at 5.  The Court finds this is a "reasonabl[e] estimate" of the number of potential class members which is not purely speculative and derives from evidence in the record. *Spread Enters.*, 298 F.R.D. at 67.  In other words, Plaintiffs have "rel[ied] on reasonable inferences drawn from the available facts to estimate the size of the class."  *Hamelin*, 274 F.R.D. at 394 (citing *Gortat I*, 257 F.R.D. at 362; *Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005)).

### 2.    *Commonality and Typicality*

The commonality and typicality requirements "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." *Falcon*, 457 U.S. at 157 n. 13. "As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations 'animate' the analysis of both Rule 23(a)(2) and Rule 23(a)(3)." *Morris I*, 2013 WL 1880919, at *8 (quoting *Marisol A.*, 126 F.3d at 376); *see Falcon*, 457 U.S. at 157 n. 13.

The commonality requirement under Rule 23(a)(2) is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). With respect to this requirement, the Supreme Court has recently observed that "[a]ny competently crafted class complaint literally raises common questions." *Dukes*, 131 S. Ct. at 2551 (internal quotations omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.* (internal quotations omitted) (emphasis in original). "That said, a single common issue of law or fact suffices to satisfy Rule 23(a)(2)." *Perez*, 2014 WL 4635745, at *15 (citing *Dukes*, 131 S. Ct. at 2556); *see Garcia*, 281 F.R.D. at 105 ("Courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."). "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Garcia*, 281 F.R.D. at 105 (quoting *Damassia*, 250 F.R.D. at 156) (internal quotations omitted); see also *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y.) *on reconsideration in part*, 293 F.R.D. 578 (S.D.N.Y. 2013) *aff'd*, 602 F. App'x 3 (2d Cir. 2015) ("[C]ommonality does not require plaintiffs to show that

class members perform identical duties—an 'impossible task.'") (quoting *White v. Western Beef Properties*, No. 07 Civ. 2345, 2011 WL 6140512, at *3 (E.D.N.Y. Dec. 9, 2011)). "'A court may find a common issue of law even though there exists some factual variation among class members' specific grievances.'" *Perez*, 2014 WL 4635745, at *15 (quoting *Han v. Sterling Nat'l Mortg. Co.*, No. 09–CV–5589, 2011 WL 4344235, at *3 (E.D.N.Y. Sept. 14, 2011) (internal quotations and alterations omitted). "The commonality requirement may thus be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct." *Id.* (internal quotations and alterations omitted); *see Guzman v. VLM, Inc.*, No. 07–CV–1126, 2008 WL 597186, at *6 (E.D.N.Y. Mar. 2, 2008).

Similarly, typicality under Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability.'" *Morris I*, 2013 WL 1880919, at *6 (quoting *Marisol A.*, 126 F.3d at 376) (citing *Garcia*, 281 F.R.D. at 106); *see Perez*, 2014 WL 4635745, at *17. "'Minor variations in the fact patterns underlying individual claims' does not defeat typicality." *Perez*, 2014 WL 4635745, at *17 (quoting *Robidoux*, 987 F.2d at 937).

Courts in this Circuit have observed that, in light of the Supreme Court's decision in *Dukes*, "the analysis of commonality and typicality has recently become stricter." *Morris I*, 2013 WL 1880919, at *9 (citing *Dukes*, 131 S. Ct. at 2551, and noting that "the Supreme Court explained that in order for claims to be 'productively litigated at once' they must depend on a 'common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke.'"); *see Flores*, 284 F.R.D. at 125.  However, "the weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases."  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases).  "In wage and hour cases, courts in this Circuit have 'focused on whether the employer had company-wide wage policies that injured the proposed class.'"  *Morris I*, 2013 WL 1880919, at *9 (quoting *Flores*, 284 F.R.D. at 275) (citing *Youngblood v. Family Dollar Stores, Inc.*, No. 09–CV–3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011)); *see, e .g.*, *Poplawski v. Metroplex on the Atl., LLC*, No. 11–CV–3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2011).

"Moreover, 'claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.'"  *Morris I*, 2013 WL 1880919, at *9 (quoting *Flores*, 284 F.R.D. at 275); *see Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y.2011) (collecting cases); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (finding that the employer's "overtime policy is the glue that the Supreme Court found lacking in *Dukes*") (internal quotation marks omitted)).

Plaintiffs assert that both the proposed sub-class, consisting of tipped employees, as well as the overall class, comprised of all non-exempt employees, involve "questions of law and fact common to the putative class [which] revolv[e] around the legality of Defendants' compensation practices and policies."  Pls.' Mem. at 19.  Specifically, Plaintiffs aver that these practices involved:  (1) failing to pay tipped employees proper minimum wage and overtime compensation based upon a policy of taking an invalid tip credit; (2) failing to pay a "spread of hours" premium; (3) engaging in improper "time shaving"; and (4) providing improper wage and hour notices.  *Id*. at 19-21.  Plaintiffs assert that these claims "are also common to other Class

Members, . . . are typical of those of other Class Members' claims and can be resolved with generalized [] proof . . . [and therefore] the commonality and typicality requirements are met." *Id*. at 21.

Defendants argue that with respect to the commonality requirement, Plaintiffs have failed to meet their burden since they "offer no facts to substantiate their allegations; offer inaccurate facts; or offer facts demonstrating dissimilarities among employee position, restaurant location, or the acting manager, all of which work to impede the necessary generation of common answers."  Defs.' Opp'n at 6-7.  Instead, Defendants claim that Plaintiffs have failed to "affirmatively demonstrate[] with significant proof that any common issues exist in this case . . . [and] [a]s a result, their motion for class certification should be denied."  *Id*. at 9.

Defendants next claim that Plaintiffs have similarly failed to meet their burden with respect to the typicality requirement.  Specifically, Defendants maintain that Plaintiffs, other than relying on the same legal arguments as interposed to establish commonality, "offer no additional proof to show that the complaints of named plaintiffs . . . are not atypical of the class . . . [and] have [therefore] failed to resolve the glaring lack of typicality inherent in their choice of [the] named plaintiffs . . . as class representatives."  *Id*. at 10.

Plaintiffs reply that the commonality and typicality requirements "tend to merge in the Second Circuit's class certification inquiry and similar considerations animate the analysis of both requirements."  Pls.' Reply at 8 (citing cases).  As such, Plaintiffs claim they have successfully established both commonality and typicality with proof in the form of:  (1) declarations from Plaintiffs; (2) time and payroll records and documents which reflect the alleged violations; and (3) the deposition testimony of Defendant Hassan.  *Id*. at 9.  Furthermore, Plaintiffs reaffirm that Defendants' allegedly wrongful payment and payroll practices —

including improper payment of wages and overtime, taking an improper tip credit, providing inaccurate wage notices and wage statements, failing to remit spread-of-hours payments, and improper wage payments due to time-shaving — were an enterprise-wide policy and were therefore common to and typical of both the named Plaintiffs and members of the class and hence both commonality and typicality are satisfied.  *Id*. 10-13.

Although Defendants broadly attack Plaintiffs proof with respect to commonality and contend that Plaintiffs have erroneously relied on the same facts and arguments to support their burden as to typicality, such assertions are unavailing.  Plaintiffs' burden with respect to commonality is simply to "identify some unifying thread among the members' claims [that] warrant[s] class treatment."  *Garcia*, 281 F.R.D. at 105 (quoting *Damassia*, 250 F.R.D. at 156) (alternation in original).  Indeed, courts have "liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."  *Damassia*, 250 F.R.D. at 156 (quoting *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)); *see Perez*, 2014 WL 4635745, at *15.  Furthermore, the existence of factual variations among the specific grievances asserted by class members will not serve to bar a court from finding a common issue of law.   *See Perez*, 2014 WL 4635745, at *15; *Han*, 2011 WL 4344235, at *3. Similarly, as to typicality, Plaintiffs need only establish that "each class member's claim arises from the same course of events" and "[a]s with commonality, typicality need not be complete." *Garcia*, 281 F.R.D. at 106.  In addition, since "similar considerations 'animate' the analysis of both Rule 23(a)(2) and Rule 23(a)(3)," *Morris I*, 2013 WL 1880919, at *8 (quoting *Marisol A.*, 126 F.3d at 376); *see Falcon*, 457 U.S. at 157 n. 13, Plaintiffs may rely on similar proof to support both requirements.

When viewed as a whole, the deposition testimony, declarations and time / payroll records are sufficient proof to meet both the commonality and typicality requirements as they adequately establish that, at minimum, there is at least "one issue common to all class members" that provides the "unifying thread" which serves to bind the claims of the class members together.  *Damassia*, 250 F.R.D. at 156; *see, e.g.*, Hassan Dep. at 26, 48 (stating that all tipped employees working at Ayhan Restaurants were subject to the same payment policy and specifically claiming Plaintiff Martinez was paid "just like everybody else" who worked as a tipped employee); Martinez Decl. ¶¶ 4, 5 (same); Camarda Decl. Decl. ¶¶ 4, 5 (same); Hassan Dep. at 64 (acknowledging failure to pay "spread-of-hours" across Defendants' restaurants during the relevant period); Martinez Decl. ¶ 8 (same); October 8, 2014 Deposition of Miguel Martinez ("Martinez Dep.") [DE 73-1], at 51-52 (alleging that it was Defendants' policy to require employees to punch out prior to the end of their shift); Pls.' Mem., Ex. I (consisting of Defendants' employee handbook which required employees to arrive and be at their workstation 15 minutes prior to the start of their shift); Hassan Dep. 93-94 (providing a basis to conclude that all employees across Ahyan Restaurants received the same or similar defective wage and hour notices and that such notices were not provided to employees prior to 2012); Martinez Decl. ¶ 10 (proper notice never provided); Camarda Decl. ¶ 11 (same).  The Court concludes that "the harm that the named Plaintiffs have allegedly suffered in this case is the same harm suffered by each class member."  *Schear v. Food Scope America*, 297 F.R.D. 114, 124 (S.D.N.Y. 2014).

Because the proof offered by Plaintiffs establishes, at this stage of the litigation, that at least one common issue identified by Plaintiffs is common to the class as a whole and because both Plaintiffs and the prospective class "were subject to the same general employment scheme" based upon "the same course of events and legal theory," the Court finds that the commonality

and typicality requirements have been met.  *Garcia*, 281 F.R.D. at 106; *see Rosario*, 2013 WL 2395288, at \*6 (noting that "Given the similarity of the practices described by the proposed class members, the Court finds that the proposed class was subjected to a uniform policy that existed across the named corporations" . . . and further recognizing that the fact that "individual class members were employed by different stores and performed different tasks does not defeat typicality. . . .") *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006) ("Even if some class members' facts are different than [the named Plaintiffs] the claims are similar enough to meet the typicality requirement."); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y.2002) ("As long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.").

### 3.    *Adequacy of Representation*

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *see, e.g.*, *Morris I*, 2013 WL 1880919, at \*11 (to satisfy Rule 23(a)(4), "'plaintiffs must show that . . . the class representatives' interests are not antagonistic to the interest of other members of the class'") (quoting *Garcia*, 281 F.R.D. at 107); *Rosario*, 2013 WL 2395288, at \*7.[1]  It is important to note

---

[1]      Before the adoption of the 2003 amendments to Rule 23, Rule 23(a)(4) also required courts to consider whether class counsel was qualified, experienced, and able to conduct the litigation.  *Perez*, 2014 WL 4635745, at \*18 (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir.1996)).  "After the 2003 amendment to Rule 23(g), however, 'the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4).'"  *Id.* (quoting *Spencer v. No Parking Today, Inc.*, No. 12–CV–6323, 2013 WL 1040052, at \*20 (S.D.N.Y.

that "[n]ot every conflict among subgroups of a class will prevent class certification—the conflict must be "fundamental" to violate Rule 23(a)(4). *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be "fundamental." *Denney*, 443 F.3d at 268. In the event a fundamental conflict does exist, it can be ameliorated by separating the class into "homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 249 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, 119 (1999) (internal quotations omitted); *see also* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

Defendants posit the following arguments why Plaintiffs are inadequate class representatives. First, Defendant asserts that Plaintiff Martinez cannot adequately represent the class because: (1) a conflict of interest exists between Plaintiff Martinez and Plaintiff Camarda regarding payment of tips by Plaintiff Camarda to "non-exempt non-tipped employees, such as plaintiff Martinez himself";[2] and (2) Plaintiff Martinez lacks credibility based upon alleged inconsistent testimony in his deposition and declaration. Defs.' Opp'n at 11-13. Second, as to Plaintiff Camarda, Defendant interposes the same conflict of interest argument and further

---

Mar. 15, 2013) (citing cases), *report & recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013)) (citing *Jones v. Ford Motor Credit Co.*, No. 00–CV–8330, 2005 WL 743213, at *18 (S.D.N.Y. Mar. 31, 2005) (discussing 2003 amendment)).

[2]      Defendants have misclassified Plaintiff Martinez as a "non-exempt non-tipped employee" when, at least since 2009, he has in fact been a tipped employee. *See* Martinez Decl. ¶ 1.

attacks Plaintiff Camarda's representative adequacy by asserting that her termination for cause undermines her credibility, making her an unsuitable class representative.  *Id*. 13-15.

In response, Plaintiffs assert that:  (1) there is no conflict between Plaintiffs Martinez and Camarda since Martinez's statement is unrelated to any of the pending claims in this motion and "the interests of Martinez (busser) and Tipped Subclass Members (including Camarda and other waiters) are aligned as to their minimum wage and overtime claims;" (2) Martinez has displayed "the significant knowledge necessary to adequately represent the class" (citing to deposition testimony from Martinez) and that any "minor discrepancies in Martinez's statements . . . do not impugn his credibility or knowledge in any meaningful way"; and (3) Camarda's termination for cause involving alleged dishonesty is not a recognized basis to attack Camarda's adequacy as a class representative.  Pls.' Reply at 14-16.

It is axiomatic that in order to satisfy the adequacy requirement of Rule 23(a)(4), "the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'"  *Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D. 257, 274 (D. Vt. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).  In the instant case, despite Defendants' attempt to establish an artificial conflict of interest with regard to Plaintiffs Camarda and Martinez in order to defeat class certification, the Court is unconvinced that to the extent such a conflict exists in the first instance, it is fundamental in nature.  To the contrary, any such conflict between the named Plaintiffs concerning whether certain tips were paid by one employee (such as Camarda) to another employee (such as Martinez) is, at most, collateral and consequently does not otherwise frustrate the common interests of the class as a whole concerning the Defendants' payment policies.  Even were the Court to find that this conflict is material or substantial, it could nevertheless be cured by separating the class into "homogeneous

subclasses . . . with separate representation to eliminate conflicting interests of counsel.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 249 (quoting *Ortiz*, 527 U.S. at 856 (internal quotations omitted).  Moreover, both Martinez and Camarda stated in their respective declarations that they do not have any conflicts with prospective class members, further belying Defendants' assertion that an actual as opposed to artificial conflict exists in this case.  *See* Martinez Decl. ¶ 13; Camarda Decl. ¶ 14.

Although Defendants next attempt to attack Plaintiff Martinez as an adequate representative based upon inconsistent statements contained in his deposition and declaration, the Court finds that "the inconsistencies in [Martinez's] deposition testimon[y] put forth by [D]efendants are not significant enough so as to indicate that [Martinez's] interests are antagonistic to those of the class or that [Martinez] will not vigorously and adequately represent the class." *Cruden v. Bank of New York*, No. 85 CIV. 4170, 1988 WL 9514, at *5 (S.D.N.Y. Feb. 1, 1988).  Indeed, "courts have held that inconsistencies in deposition testimonies are generally insufficient to disqualify plaintiffs from representing the class."  *Cruden*, 1988 WL 9514, at *5; *see Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16, 21 (E.D.N.Y. 2014) ("[I]nconsistent deposition testimony in and of itself will not serve as a ground for denial of class certification."); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 357 (E.D.N.Y.1997) *aff'd*, 164 F.3d 81 (2d Cir.1998) (collecting  cases); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 178 (S.D.N.Y.2008) (collecting cases).  Further, there is nothing in the record to indicate that Plaintiff Martinez is "so lacking in credibility that [he is] likely to harm" the interests of the putative class members.  *Rosario*, 2013 WL 2395288, at *7 (internal citation omitted); *see In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y.1997) ("Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in

flagrant cases, where the putative class representatives . . . are so lacking in credibility that they are likely to harm their case.") (internal citations omitted).  In light of the circumstances and the applicable case law, Defendants' argument here is unavailing.

Defendants fair no better in attempting to frustrate the adequacy requirement by assailing Plaintiff Camarda's credibility.  First, Defendants' conflict of interest argument, as applied to Camarda, which is identical to the argument made against Martinez, is unsuccessful for the same reasons outlined above.  Second, with respect to Defendants' contention that Camarda's termination for cause undermines her credibility to the extent that she is an unsuitable class representative, the Court points out that courts in this Circuit have roundly rejected the notion that termination from employment alone impacts a representative plaintiff's adequacy as a class representative.  *See Perez*, 2014 WL 4635745, at *18 ("[T]he Court cannot see how the reason for Perez's and Brown's termination would be relevant to a determination of whether they had substantially the same job duties as all other members of the NYLL Class and were misclassified as exempt employees."); *Iglesias–Mendoza*, 239 F.R.D. at 372 (rejecting argument that representative plaintiff was inadequate class representative because she had been fired for misconduct); *Garcia*, 281 F.R.D. at 107 (same); *Guzman*, 2008 WL 597186, at *7 (same). The Defendants have offered no evidence to show that the ability of Plaintiff Camarda "to represent the interests of the NYLL Class fairly and adequately" has been impaired by her prior termination by Defendants (other than identifying the termination itself).  As such, the Court finds this issue is irrelevant for purposes of establishing Camarda's adequacy as a class representative under Rule 23.  *Perez*, 2014 WL 4635745, at *18.

For the foregoing reasons, Plaintiffs have demonstrated adequacy of representation sufficient to satisfy the requirements of Rule 23(a)(4).

C.      **Rule 23(b)(3) Prerequisites**

Having determined that the prerequisites of Rule 23(a) have been met, the Court must decide whether the proposed class fits within one of the three categories of cases set forth in Rule 23(b).  Plaintiffs maintain that the class should be certified under Rule 23(b)(3) because "the questions of law or fact common to the members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

1.      ***Predominance***

The predominance element of Rule 23(b)(3) requires a showing that common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). "A court's inquiry into this element 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation' and is similar to the analysis of the commonality and typicality requirements."  *Morris I*, 2013 WL 1880919, at *12 (quoting *Amchem Prods., Inc.*, 521 U.S. at 623; *see Perez*, 2014 WL 4635745, at *19.  "'To meet the predominance requirement, a plaintiff must establish that the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'"  *Morris I*, 2013 WL 1880919, at *10 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir. 2001); *see Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  "Further, predominance is satisfied where . . . the 'central issue' is whether defendants had a 'uniform policy or practice' of denying wages for all hours worked, overtime wages, and spread of hours compensation."  *Morris I*, 2013 WL 1880919, at *12 (quoting *Garcia*, 281 F.R.D. at 108); *see Guzman*, 2008 WL 597186, at *8.

Other than restating the standard for predominance set forth in Rule 23(b)(3) and
accompanying caselaw, Defendants rely exclusively on the same arguments interposed to defeat
commonality and typicality — arguments which the Court has found unpersuasive — in order to
show that Plaintiffs have failed to establish predominance.  *See* Defs.' Opp'n at 16 ("Plaintiffs
fail to satisfy thus [*sic*] requirement for the same reasons that they fail to satisfy the requirements
of Rule 23(a) regarding commonality and typicality.").  However, just as the Court found
Defendants' arguments unavailing in the context of commonality and typicality, those same
arguments are ineffective on the issue of predominance.

Plaintiffs have alleged that Defendants engaged in a common policy of: (1) failing to pay
proper minimum wages and overtime; (2) failing to provide proper wage statements; (3)
engaging in invalid tip pooling; (4) failing to pay spread-of-hours wages; (5) failing to provide
proper wage and hour notices; and (6) engaging in time-shaving.  Pls.' Mem. at 6-13;
*see generally* Martinez Decl., Camarda Decl.  These types of claims "are about the most perfect
questions for class treatment."  *Iglesias–Mendoza*, 239 F.R.D. at 373.  *See Rosario*, 2013 WL
2395288, at *9 (finding that claims involving an employer's uniform practice of failing to pay
proper minimum wages and overtime compensation were predominant); *Garcia*, 281 F.R.D. at
108 ("predominance is satisfied where, as here the central issue is whether the defendants had a
uniform policy or practice of denying overtime and spread-of-hours compensation to its
employees") (internal quotations and citation omitted); *see also Gonzalez v. Nicholas Zito
Racing Stable Inc.*, No. 04 CV 22, 2008 WL 941643, at *7 (E.D.N.Y. Mar. 31, 2008) (finding
predominance requirement met where "Defendants failed to pay their stable workers, including
grooms and hot walkers, overtime wages and whether this alleged failure violated NYS Labor
Law."); *Mascol v. E & L Transp., Inc.*, No. 03-3343, 2005 WL 1541045, at *7 (E.D.N.Y.

28

June 29, 2005) (finding predominance where common question in class action was whether defendants failed to pay their ambulette drivers overtime wages and whether this alleged failure violated NYS Labor Law); *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 450 (S.D.N.Y. 2010) *aff'd*, 721 F.3d 77 (2d Cir. 2013) (finding that "common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate").

In light of the above factors, common questions of liability clearly predominate over individual inquiries and although "factual variation among the circumstances of the class members is inevitable[, such variations] do[] not defeat the predominance requirement." *Gonzalez*, 2008 WL 941643, at *7.  Likewise, to the extent that class members will "have different damages, depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance."  *Rosario*, 2013 WL 2395288, at *9; *see Perez*, 2014 WL 4635745, at *22 (holding that "the common issues of law and fact . . . predominate despite the presence of individualized damages," and noting that "[o]ther district courts within this Circuit, whose decisions this Court finds persuasive, have recognized that common issues of liability predominate over individual damages issues in wage-and-hour cases like this one") (collecting cases); *Garcia*, 281 F.R.D. at 108 ("Although individual questions as to damages may exist, 'common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.'") (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011)).

In sum, common questions of liability predominate over individual inquiries as to damages here.  *See, e.g.*, *Perez*, 2014 WL 4635745, at *24; *Morris I*, 2013 WL 1880919, at *14. Accordingly, plaintiffs have satisfied the predominance requirement under Rule 23(b)(3).

2.    *Superiority*

Rule 23(b)(3) also requires a class action "be superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "District courts in this Circuit 'routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant.'"  *Morris I*, 2013 WL 1880919, at *14 (quoting *Garcia*, 281 F.R.D. at 108); *see Whitehorn*, 275 F.R.D. at 193 (collecting cases)); *Tiro v. Public House Investments, LLC*, Nos. 11–CV–7679, 11–CV–8249, 2012 WL 6053961, at *8 (S.D.N.Y. Dec. 4, 2012).

In the instant case, Plaintiffs' proposed class "is significantly numerous and possess[es] relatively small individual claims."  *Morris I*, 2013 WL 1880919, at *14.  Moreover, "the fact that the Court has already certified this matter as a collective action goes a long way toward establishing superiority "given that the New York Labor Law claims are nearly identical to the FLSA claims. . . ."  *Rosario*, 2013 WL 2395288, at *9 (internal citation omitted).  Accordingly, "not only would a class action in the instant case allow for a 'more cost-efficient and fair litigation of common disputes' than individual actions, but it is likely the only device by which many of the proposed class members would obtain relief.  *Morris I*, 2013 WL 1880919, at *14 (quoting *Garcia*, 281 F.R.D. at 108); *see Iglesias–Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"); *Perez*, 2014 WL 4635745 ("In the instant case, the NYLL Class consists of hundreds of potential class members, most of whom are likely to have suffered a small economic loss if they prevailed on individual claims arising from

the dispute that is the subject of this lawsuit. Therefore, 'few individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail, particularly when many of the putative plaintiffs have suffered economic loss of *de minimis* value.'" (quoting *Han v. Sterling Nat'l Mortg. Co., Inc.*, No. 09-CV-5589, 2011 WL 4344235, at *11 (E.D.N.Y. Sept. 14, 2011)).

Given these considerations, the Court concludes that a class action is superior to other available methods for fair and efficient adjudication of the claims here.  The interest of the class as a whole to litigate the predominant common questions outweighs any interest of individual members to bring and prosecute separate actions.  For these reasons, the Court finds that Plaintiffs have satisfied the superiority element of Rule 23(b)(3).

## D.   Ascertainability

In addition to the explicit prerequisites enumerated in Rule 23, courts in this Circuit have also required "ascertainability."  *Guan Ming Lin*, 2012 WL 7620734, at *11; *Gortat I*, 2010 WL 1423018, at *2 ("[I]n order for a class to be certified, the named plaintiffs must demonstrate that there is an identifiable class.").  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y.2012).  The standard required to establish ascertainability is "not demanding [as] it is meant 'only to prevent the certification of a class whose membership is truly indeterminable.'" *Rosario*, 2013 WL 2395288, at *3 (quoting *Gortat I*, 2010 WL 1423018, at *2).  As such, in order to meet this criterion, "the Court need only be able to ascertain the general boundaries of the proposed class." *Rosario*, 2013 WL 2395288, at *3; *see Guan Ming Lin*, 2012 WL 7620734, at *11 ("the ascertainability requirement means that the class description is sufficiently definite

so that it is administratively feasible for the court to determine whether a particular individual is a member") (quoting *Stinson*, 282 F.R.D. at 373).

In cases where "the proposed class definition relies in part on the consideration of defendants' alleged liability," courts have "routinely granted" class certification. *Noble*, 224 F.R.D. at 342 (collecting cases); *see Rosario*, 2013 WL 2395288, at *4. Indeed, "[w]ere it otherwise, the benefits of the class action mechanism could be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful *practice or policy* might be precluded from collectively bringing suit." *Noble*, 224 F.R.D. at 342 (emphasis in original).

Turning to the instant case, the record demonstrates that Plaintiffs' proposed class can be delineated by objective criteria and is therefore ascertainable. Indeed, Defendants themselves seem to concede that this criterion is met in arguing against a finding of numerosity. *See* Defs.' Opp'n at 4-5 (stating that "[p]utative class members are easily identifiable" and that "it is feasible to locate and identify potential class members"). Although Defendants' attempt to argue against a finding of ascertainability at a later point in their opposition papers, *see id.* at 15-16, Defendants cannot have it both ways and the Court finds Defendants' arguments in this regard unavailing. In any event, Plaintiffs' proposed class is objectively identifiable in light of factors "such as the name of the employer, the employment period, and whether the employee is paid minimum wage. [Further,] [m]embership in the class can be ascertained by objective documentation, such as the defendants' payroll records and wage statements; and no subjective criteria are required to determine the class' contours." *Guan Ming Lin*, 2012 WL 7620734, at *12; *see Rosario*, 2013 WL 2395288, at *4 ("Plaintiff's proposed class of employees who have not been paid all wages owed to them . . . is the type of class definition based on defendants' alleged liability which satisfied ascertainability.") (internal quotations and citation omitted);

*Flores*, 284 F.R.D. at 123 (noting that the class of employees "can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements."); *Jankowski v. Castaldi*, No. 01 CV 0164, 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (same).

E.      **Class Counsel**

Pursuant to Federal Rule of Civil Procedure 23(g), the Court must next consider whether to recommend to Judge Wexler that the Lee Litigation Group, PLLC, be appointed as class counsel.  Rule 23(g) requires a court to consider the following four factors in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

In the instant case, Defendants have not disputed the qualifications or experience of Plaintiffs' counsel in litigating class actions.  In addition, counsel provided a declaration outlining his firm's experience in litigating wage and hour class action lawsuits similar in size and scope to the instant action.  Specifically, attorney C.K. Lee of the Lee Litigation Group, PLLC, represents that his firm is comprised of six attorneys who collectively have "significant experience with employee rights [and have] . . . represented hundreds of individual employees in wage and hour matters."  *See* December 15, 2014 Declaration of C.K. Lee ("Lee Decl.") [DE 69] ¶ 3.  Mr. Lee states that "during the last five years, [he] has served as lead counsel in numerous

wage and hour class and collective actions. . . ." *Id.* ¶ 6 (citing cases).  Further, Mr. Lee asserts that his firm has "recovered significant sums of money for a number of New York City employees, including restaurant employees . . . [and that he has] increased awareness of wage and hour laws throughout the New York City restaurant industry." *Id.* ¶ 7.  Counsel also states that his firm is "willing and able to commit the necessary resources to represent the class." *Id.* ¶ 8.

In light of the fact that counsel has done significant work in litigating this case through this stage of the proceedings and based upon the record of counsel's experience in this type of litigation – and because there is otherwise no dispute as to the appointment of the Lee Litigation Group, PLLC as class counsel in this case -- the Court respectfully recommends to Judge Wexler that the Lee Litigation Group, PLLC be appointed as class counsel in this case.

### F.      Proposed Notice

Plaintiffs have submitted a proposed class notice for Court approval.  *See* Lee Decl., Ex. 1.  Defendants, in their opposition to Plaintiffs' motion, have not commented as to the adequacy of Plaintiffs' proposed notice.  Nevertheless, pursuant to Rule 23(c)(2)(B), "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."). The notice must clearly state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R.Civ.P. 23(c)(2)(B).

In order to ensure proper compliance with Rule 23(c)(2)(B), courts have directed that "the parties shall submit a *joint* proposed notice to the Court for approval in order to ensure that the drafting and distribution of the notice is timely, accurate, and informative." *Flores*, 284 F.R.D. at 131 (emphasis added); *see Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 CV 2579, 2008 WL 938584, at *4 (S.D.N.Y. Apr. 7, 2008) ("notice should be jointly prepared"); *Chowdhury v. Duane Reade, Inc.*, No. 06 CIV. 2295, 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) ("The Court expects the parties to work out those issues on their own, and provide the Court with the stipulated notice.") *Spencer*, 2013 WL 1040052, at *28 (directing that a joint proposed notice be submitted to the court for review).

In light of the fact that the proposed notice submitted by Plaintiffs' counsel appears to have been unilaterally prepared, without any responsive input from Defendants' counsel, the Court respectfully recommends to Judge Wexler that the parties be directed to engage in an immediate good faith meet-and-confer and to submit forthwith a jointly proposed notice for review and approval.

## VI.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Wexler that Plaintiffs' motion for class certification be GRANTED.  Specifically, the Court respectfully recommends to Judge Wexler that:

> (1) the following class be certified:
>
>> All non-exempt employees (including the subclass of tipped employees which is comprised of runners, bussers, waiters, barbacks, and bartenders) who worked for AYKEN, INC. (d/b/a Ayhan's Fish Kebab), AYHAN'S SHISH-KEBAB OF BALDWIN INC. (d/b/a Ayhan's Mediterranean Restaurant), SHISH KEBAB SNACK BAR, INC. (d/b/a Ayhan's Mediterranean Restaurant), AYHAN'S SHISH

KEBAB INTERNATIONAL CORP. (d/b/a Ayhan's Mediterranean Restaurant), GREAT NECK ASK, INC. (d/b/a Ayhan's Mediterranean Restaurant), CYPRUS GRILL, LLC (d/b/a Ayhan's Mediterranean Restaurant), 293 MEDITERRANEAN MARKET CORP. (d/b/a Ayhan's Mediterranean Marketplace and Café), AYHAN'S SHISH-KEBAB RESTAURANTS OF ROCKVILLE CENTRE, INC. (d/b/a Ayhan's Pita Express), or AYHAN'S SHISH-KEBAB EXPRESS, INC. (d/b/a Ayhan's Pita Express) between December 31, 2007 and December 31, 2013;

(2) the Lee Litigation Group, PLLC be appointed as class counsel in this case; and

(3) the parties submit a jointly proposed notice to the Court forthwith for review and approval.

## VII.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Leonard D. Wexler, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Wexler prior to the expiration of the fourteen (14) day period for filing objections.** Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

### SO ORDERED.

Dated: Central Islip, New York
        February 29, 2016

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        United States Magistrate Judge

36