# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ANGEL CORONEL MARTINEZ and JESSICA CAMARDA, *on behalf of themselves, FLSA Collective Plaintiffs and the Class*,<br><br>        Plaintiffs,<br><br>  -against-<br><br>AYKEN, INC. d/b/a AYHAN'S FISH KEBAB, AYHAN'S SHISH-KEBAB OF BALDWIN, INC. d/b/a AYHAN'S  MEDITERRANEAN RESTAURANT, SHISH KEBAB SNACK BAR, INC. d/b/a AYHAN'S MEDITERRANEAN RESTAURANT, AYHAN'S SHISH-KEBAB INTERNATIONAL CORP. d/b/a AYHAN'S MEDITERRANEAN RESTAURANT, GREAT NECK ASK, INC. d/b/a AYHAN'S MEDITERRANEAN RESTAURANT, CYPRUS GRILL, LLC d/b/a AYHAN'S MEDITERRANEAN RESTAURANT, 293 MEDITERRANEAN MARKET CORP. d/b/a AYHAN'S MEDITERRANEAN MARKETPLACE AND CAFÉ, AYHAN'S SHISH-KEBAB RESTAURANTS OF ROCKVILLE CENTRE, INC. d/b/a AYHAN'S PITA EXPRESS, AYHAN'S SHISH-KEBAB EXPRESS, INC., d/b/a AYHAN'S PITA EXPRESS, and AYHAN HASSAN,<br>        Defendants. | Case No. 2:13-cv-07411 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND........................................................1

   I. Procedural History ..............................................................................................1

   II. Overview of Investigation and Discovery.................................................................2

   III. Settlement Negotiations, Further Discovery & Preliminary Approval ..................5

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ..................6

ARGUMENT ...............................................................................................................7

   I. The Settlement Class Meets the Legal Standard for Class Certification ..................7

      A. Numerosity..........................................................................................9

      B. Commonality.......................................................................................9

      C. Typicality ..........................................................................................10

      D. Adequacy of the Named Plaintiffs ...................................................11

      E. Certification Is Proper Under Rule 23(b)(3) ....................................11

         1. Common Questions Predominate ................................................12

         2. A Class Action Is a Superior Mechanism ...................................13

   II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
Approved in All Respects .......................................................................................13

      A. The Proposed Settlement Is Substantively Fair ...............................14

         1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ................................................................15

         2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .............15

         3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ........................................16

i

4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ..................................................................................................17

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ......................................................................18

6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) .............................................................................................................18

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................19

B. The Proposed Settlement is Procedurally Fair .................................................21

1. The Settlement Was the Result of Arm's Length Negotiation .................21

2. The Distribution of Class Notice Satisfied Due Process ...........................22

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............24

CONCLUSION ...........................................................................................................26

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) .......25

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................15, 16,17

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996) ...................................................................................................23

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)...........................................................23

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................21

*Campos v. Goode*,
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) .....................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................................14

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) ...........................................................10, 12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................9

*In re Cendant Corp. Litig.*, 264 F .3d 243, 263 ...............................................................16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)............................................15, 21

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............................. passim

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)..............................................7

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ........................... passim

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)............10

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................21

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...................9, 10, 13, 16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................9

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)......................14

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ...................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................13

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)................................25

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) ...............................17

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)............23

*In re Prudential Securities, Inc.,* 164 F.R.D. 362 (S.D.N.Y 1996)....................23

*In re Colt Indus.,* 155 A.D.2d 154, 553 N.Y.S.2d 154 (1st Dep't 1990)..........................23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986)..............9

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ...................25

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...............................................9, 10, 17

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) ...........................16

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) .......................................12

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ...............................25

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ......................................11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................21

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) .........................17

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C.Cir.1992).........24

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ....................................................................9

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ...................15

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)..............................................10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .......................12

*Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir.1994)........................................24

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...................22

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ...........12

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...................11

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001)..............................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)...............................................................................14

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)................16

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988).......................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ............................................................................... passim

Fed. R. Civ. P. 23(b)(3)............................................................................ passim

Fed. R. Civ. P. 23(e)(2) ....................................................................................14

**INTRODUCTION**

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. The Parties' $300,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement"); and (3) approving the FLSA Settlement.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Procedural History**

On December 31, 2013, Plaintiffs filed a Class and Collective Action Complaint. The Complaint asserts collective and class action claims against Defendants. Specifically, Plaintiffs alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and/or the New York Labor Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations by, inter alia: (1) failing to pay minimum wage, based on invalid tip credit; (2) failing to pay wages for off-the-clock work; (3) failing to pay spread of hours premium; and (4) failing to meet the NYLL's requirements on wage statements and notices. On June 30, 2014, the parties engaged in a private mediation with mediator Richard A. Mormile, for a class of 367 tipped employees. For the purposes of the mediation, Defendants produced employment information for tipped employees at all of

Defendants' restaurants for a six-year period. The mediation was unsuccessful and the parties resumed litigation.

On April 25, 2014, Plaintiffs filed their motion for conditional collective certification, which was fully briefed, including supplemental submissions, on February 26, 2015. By Order dated March 27, 2015, the Court granted Plaintiffs' motion for conditional collective certification. Plaintiffs mailed notice to putative collective class members and fourteen individuals opted-in by filing consents to sue. Plaintiffs moved for class certification under Rule 23, which motion was fully briefed as of May 4, 2015. By Order dated February 29, 2016 the Court granted Plaintiffs' motion for class certification, and certified a class. On August 19, 2016 Defendants changed counsels (See ECF Dkt. No. 105) and Kaufman, Dolowich & Voluck LLP was substituted for former counsel Jose Santiago, Esq. (so Ordered by the Court on August 22, 2016, ECF Dkt. No. 106).

After the decision on class certification and the substitution of counsel, Plaintiffs and Defendants agreed to engage in dialogue regarding the possibility of a voluntary resolution of the claims asserted in the Litigation. On August 23, 2016, the parties informed the Court that the parties would engage in private mediation following an exchange of information and payroll data. (ECF Dkt. No. 107).

## II. Overview of Investigation and Discovery

Plaintiffs' Counsel conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, if any, and the propriety of class certification. Through discovery produced in connection with mediation, Plaintiffs' Counsel received and analyzed documentation produced by Defendants (for settlement purposes only), including time and payroll records of Plaintiffs and Class Members

employed by Defendants. Plaintiffs' Counsel also interviewed their clients concerning the claims in the case. Based on this discovery, Plaintiffs' Counsel was able to assess the merits of Plaintiffs' claims, the likelihood of class or collective action certification, and potential damages.

Prior to the private mediation with mediator Martin Scheinman on October 14, 2016, at which the Parties reached a settlement in principle, Plaintiffs' Counsel performed a damages calculation for the following claims: (i) unpaid minimum wages due to invalid tip credit, (ii) unpaid wages for off-the-clock work, (iii) unpaid spread of hours premiums, and (iv) statutory damages. After investigating the claims of Plaintiffs and the Class, in Plaintiffs' and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened.

Plaintiffs wish to avoid the risk of further litigating their claims. There is an inherent risk in going to trial of being unable to establish any liability. A trial would involve significant risks to Plaintiffs in light of the defenses available to Defendants. Plaintiffs and the Class claim, and Defendants deny, that Defendants took an invalid tip credit, leading to unpaid wages for tipped employees. They allege that the tip credit was invalid for two reasons: (i) first, because they and Class Members spent more than 20% of their time performing non-tip generating duties during their respective shifts, such as sweeping and mopping the floor, cleaning counters and the refrigerator, moving chairs, setting tables, washing the carpet, and watering and cleaning plants, among other similar duties, in violation of the "80-20 rule," and (ii) second, Defendants failed to provide proper tip credit notices. Plaintiffs allege, and Defendants deny, that Defendants failed to provide wage statements that listed the amount of tip credit claimed per pay period. Defendants have produced to Plaintiffs notices that meet the legal requirements and could be used to demonstrate that Defendants made a good-faith effort to adequately provide Plaintiffs and the

Class with proper tip credit notice. This claim would also be risky if the case were to proceed to trial because the amount of time spent performing non-tipped work varied from person to person. Proving this would rely heavily on witness testimony and Defendants would provide their own witnesses to counter such claims, which could impede Plaintiffs' ability to defend their claim, or result in a lower recovery.

If Defendants were to succeed at trial in establishing that Plaintiffs and the class were properly paid for all hours worked, Plaintiffs and class members would run the risk of obtaining less than the payment being received in the settlement, if anything at all. We believe that even if Plaintiffs were to obtain a judgment greater than $300,000 in the future, likely more than two years given the jury backlog caused by the COVID-19 Pandemic, any additional amounts would be significant risk to collection since Defendants maintain that they cannot withstand a greater judgment. Considering the risks of ongoing litigation on the already 8-year pending case, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the $300,000 settlement amount provides Plaintiffs and the Class with a recovery that is both fair and reasonable. Particularly, given the economic complications resulting from the current COVID-19 Pandemic, and the closures of many Defendants' restaurants, obtaining any payment on a class settlement is a complete victory and puts money in the hands of workers who need it.

The various risks on the substance of the claims and the challenges with achieving commonality on the class claims make this a good recovery for the Class, where each person will obtain, on a gross, per capita basis, $274.73 per person before fees and expenses are deducted, without class members having to endure litigation. Based on the Claims Administrator's calculations of the actual settlement allocations to the Class Members who did not opt out, the highest settlement payment will be approximately $1,039.12, and the average settlement payment

will be approximately $134.51. While Plaintiffs believe that they could ultimately establish Defendants' liability on some of their claims, to do so would require significant factual development. Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Moreover, given the current economic conditions and societal shutdown caused by the coronavirus, obtaining any further, timely payment on this class settlement would be a complete victory and would put money in the hands of workers who need it. This factor therefore weighs heavily in favor of final approval.

### III.     Settlement Negotiations, Further Discovery & Preliminary Approval

The Parties engaged in extensive negotiations. The formal parameters of the settlement were the result of contentious negotiations. In addition to numerous telephone conferences for settlement, the parties engaged in two private mediations, first with mediator Richard A. Mormile, on June 30, 2014, for a class of 367 tipped employees, which was unsuccessful. The parties were ultimately able to resolve this case through a full-day mediation overseen by Martin Scheinman on October 14, 2016. Prior to the mediation, Plaintiffs submitted a detailed mediation statement which explained to Mr. Scheinman the Plaintiffs' and class' claims, noted Defendants' vulnerabilities, acknowledged risks, and provided and explained Plaintiffs' damage calculations. Thereafter, however, the Parties were unable to execute a settlement agreement, despite Plaintiffs' many attempts to finalize the terms of the class settlement in good faith and at significant length.

On November 16, 2018, Defendants changed counsels (for a second time) (See ECF Dkt. No. 129), and Nixon Peabody LLP was substituted for former counsel Kaufman, Dolowich & Voluck LLP (so Ordered by the Court on November 21, 2018, ECF Dkt. No. 134). The discovery

schedule was also re-set by the Court on April 10, 2019 (See ECF Dkt. No. 138). After additional negotiations, the Parties reached an agreement on all terms, which they memorialized in the Settlement Agreement, which was fully executed on November 14, 2019.

If the Parties had not been able to settle amicably, the Parties would have engaged in further discovery, conducted additional depositions, and Plaintiffs would have moved for summary judgment, and Defendants would have moved for de-certification of the class and FLSA collective as well as summary judgment, each at a significant cost to the Parties.

Because of the uncertainty of Plaintiffs' legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $300,000.00. Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on September 17, 2021.

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $300,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes) |
| Attorneys' Fees, Costs & Expenses | 1/3 of the Gross Settlement Fund $100,000, inclusive of costs and expenses | Class Counsel has filed a motion for approval of attorneys' fees, cost and expenses with this motion. |
| Administration Fees | Advanced Litigation Strategies LLC $25,000 | Administration Fees are to be paid out of the Gross Settlement Fund. |
| Service Awards | $28,000 | Service awards to 2 Named Plaintiffs and 9 Opt-In Plaintiffs for their assistance to Class Counsel and service on behalf of the Class. Class Counsel has filed a motion for approval of these service awards simultaneously with this motion. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. |
| Allocation Formula | How will the individual settlement allocations be calculated? | (i) For Class Members who were employed by Defendants at any time between December 31, 2007 and December 31, 2013, and who worked ninety-one (91) consecutive calendar days or |

| | | more ("First Class Period"), their individual settlement allocations will be calculated based on the number of workweeks worked by such Class Members during the First Class Period. |
|---|---|---|
| | | (ii) Class Members who were employed by Defendants at any time from January 1, 2014 to October 15, 2016 ("Second Class Period") will receive a lump sum flat payment of $25. |
| | | (iii) If a Class Member was employed during both the First Class Period and the Second Class Period, he/she will receive allocations based on both weeks worked during the First Class Period, and the lump sum flat payment of $25 for work during the Second Class Period. (Settlement Agreement) § 3.4(A). |
| | | (iv) Class Members who were employed by Defendants at any time from December 31, 2007 to December 31, 2013, and who worked ninety (90) consecutive calendar days or less, will receive a lump sum flat payment of $25. |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |
| Funding | What is the status of Defendants' funding? | Defendants have funded $100,000 of the settlement amount to the Administrator; $200,000 is currently being held in escrow with Defendants' bank, American Community Bank. |
| Reversion | Is there any reversion? | No. Any uncashed settlement checks or Service Awards and all amounts remaining in the Gross Settlement Fund six months after the mailing of settlement checks shall be paid to a *cy pres* charitable donation to an organization designated by Plaintiffs' Counsel. |

# ARGUMENT

## I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006).

On September 17, 2021, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiffs respectfully request that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiffs, Opt-In Plaintiffs, and current and former employees of the Defendants who performed work as non-exempt employees employed at Defendants' restaurants: (a) Ayhan's Shish Kebab Mediterranean Restaurant with locations at: 550 SUNRISE HIGHWAY, BALDWIN, NY 11510; 132 MIDDLE NECK ROAD, GREAT NECK, NY 11024; 283 MAIN ST., PORT WASHINGTON, NY 11050; 379 S. OYSTER BAY RD, PLAINVIEW, NY 11803; and 477 OLD COUNTRY ROAD, WESTBURY, NY 11510; (b) Ayhan's Mediterranean Marketplace and Café located at 293 MAIN ST. PORT WASHINGTON, NY 11050; (c) Ayhan's Fish Kebab Restaurant located at 286 MAIN ST., PORT WASHINGTON, NY 11050; (d) Ayhan's Pita Express with locations at: 201 SUNRISE HIGHWAY, ROCKVILLE CENTRE, NY 11570; and 339 NEWBRIDGE ROAD, EAST MEADOW, NY 11554, from December 31, 2007 to October 15, 2016, and who do not opt-out of the class. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

**A. Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs clearly satisfy the numerosity requirement as there are 1,092 class members.

**B. Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiffs' view, the required relationship between the claims of Plaintiffs and those of the class clearly exists here.

This case involves numerous common issues. Plaintiffs and the Rule 23 class members all bring common claims involving allegations that Defendants failed to pay Class Members their proper minimum and overtime wages due to their taking of an invalid tip credit, which Defendants

deny. Plaintiffs also allege, and Defendants deny, that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at \*2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at \*3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiffs and the Rule 23 Class Members performed the same or similar job duties as non-exempt employees employed at Defendants' restaurants at any time during the Class Period. Plaintiffs make the same allegations

regarding unpaid minimum wages, unpaid wages for off-the-clock hours, and unpaid spread of hour premium. Plaintiffs and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiffs satisfy the typicality requirement.

## D. Adequacy of the Named Plaintiffs

Named Plaintiffs Miguel Angel Coronel Martinez and Jessica Camarda are adequate class representatives. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiffs satisfy the adequacy requirement because there is no evidence that Plaintiffs and class members' interests are at odds – on the contrary, Plaintiffs' interests are clearly aligned with the interests of the class.

## E. Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1. Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all non-exempt employees were subjected to the same unlawful policies, and that all non-exempt employees failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of

overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiffs therefore satisfy Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

## A. The Proposed Settlement Is Substantively Fair.

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

---

[1] Defendants deny Plaintiffs' allegations and assert that they complied with all applicable laws and regulations at all times.

**1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 1,092 putative class members with fact-intensive claims under both federal and state law. A complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. Moreover, in light of the current COVID-19 public health crisis and the resulting delays, should the settlement not be approved and the litigation continue, there would be significant delay to engage in continued discovery and motion practice, and it is unknown when a trial on this matter could feasibly occur, in view of the current guidelines set forth by the New York State Government. This settlement, on the other hand, makes monetary relief available to class members on this long-pending case, weighing in favor of final approval.

**2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the claims administrator

mailed the Court-approved notices ("Notices") of the class and collective action settlement to the class members. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members have objected to the settlement or exercised their right to opt-out.

**3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).**

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The Parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Prior to the October 14, 2016 mediation, Plaintiffs' Counsel obtained substantial amounts of data relating to Plaintiffs' employment with Defendants, including time and payroll records of Plaintiffs and Class Members employed at all of Defendants nine (9) restaurants.

Based on these circumstances, the Parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels'

negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation). Therefore, this factor also weighs in favor of final approval.

**4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra.*

Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. We believe that even if Plaintiffs were to obtain a judgment greater than $300,000 in the future, likely more than two years given the jury backlog caused by the COVID-19 Pandemic, any additional amounts would be significant risk to collection since Defendants already maintain that they could not withstand a greater judgment, and have closed most of their restaurants. Therefore, considering the (i) risk of obtaining an unenforceable judgment after significant litigation, (ii) unlikelihood of obtaining a greater sum after a jury trial based on the evidence, (iii) the importance of maintaining Defendants' economic viability during

the COVID-19 Pandemic, and (iv) the timely payment provided to Plaintiff and Class Members whose financial or work situations may have been severely impacted by the current pandemic, this factor weighs heavily in favor of approval.

**5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as how many overtime hours were uncompensated and what each class member's individual understanding was regarding the tip credit being taken by Defendants. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

**6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).**

Defendants maintain that they are unable to withstand a greater judgment due to various factors, including the negative and ongoing impact of the current coronavirus pandemic on their business operations. However, even if Defendants were able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Moreover, due to the economic reality of the pandemic, Class Members, who have lost their livelihoods and employment prospects due to the impact of the pandemic, would receive a monetary benefit from this settlement which is more important now

than ever. Therefore, Defendants' inability to withstand a greater judgment weighs heavily in favor of the fairness of the Settlement.

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $300,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc,*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Wal-Mart,* 396 F.3d at 119). Under the best case scenario, and considering the risks described above, assuming Plaintiffs and the Class were to prevail on their claims for unpaid wages for off-the-clock hours, unpaid minimum wages due to invalid tip credit, unpaid spread of hour premium, and wage notice and wage statement violations, the total class liability (exclusive of liquidated damages) is approximately $3.5 Million. Prior to mediation, the "best case scenario" was calculated for employees at all nine of Defendants' restaurants for the entire six-year statutory period. However, at mediation, and based on the records produced, the best-case scenario was significantly reduced.

First, Defendants produced records showing compliance with the requirements of taking a tip credit beginning January 1, 2014, resulting in little to no liability thereafter. As to the time shaving claim, Defendants records showed that employees clocked in when they arrived at work, prior to their scheduled hours, thus reducing the alleged amount owed for off-the-clock work.

Regarding Plaintiffs' claims for spread of hours, although no spread of hours premium was paid by Defendants, based on the documentation provided the liability for spread of hours is no more than $80,000. Lastly, as to the wage statement and wage notice violations, the time period in which the notices and statements were deficient was only from April 2011 to July 2011, thus significantly reducing the liability on such claims. Although Plaintiffs calculated $1.3 million for WTPA claims liability (for the entire six-year period) the more accurate calculation for just the non-compliant period, April 2011 to July 2011, would be just $72,000. This calculation amount may be further reduced because of Defendants' positions and affirmative defenses.

Upon the Court's approval, each class member who does not opt out will receive a payment based on the allocation formula. Certain class members will receive payments proportional to the duration of his or her employment during the class period, while others employed during the period in which Defendants were compliant, will receive a flat payment. For those individuals that did not opt out of the settlement, the highest individual allocation amount is $1,039.12, and the average settlement payment will be $134.51. Given the inherent risks of litigation discussed above, in Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal.

Considering the significant risks of litigation, maintaining class certification and most significantly, the economic impact of COVID-19 on the Defendants' ability to pay a greater judgment, it is likely that any judgment after trial may be uncollectable, resulting in zero recovery to class members. Here, on a gross, per capita basis, the per person award would be approximately $274.73 to each Class Member, before fees and expenses are deducted, without the class members having to do anything.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

**B. The Proposed Settlement Is Procedurally Fair.**

### 1. The Settlement Was the Result of Arm's Length Negotiation

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,

2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the Parties, including two separate full-day mediations with neutral third-party mediators during which the Parties engaged in a vigorous exchange regarding their respective claims and defenses. Class Counsel spent significant effort to achieve the $300,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Plaintiffs also performed detailed damages calculations based on the data that Defendants provided. Lastly, each of the named Plaintiffs was deposed, as was Ayhan Hassan, the individually named Defendant, and a 30(b)(6) witness for each of the corporate defendants. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

After several years of litigation and motion practice, the Parties' mediation with Martin Scheinman and subsequent negotiations, the Parties reached and executed a detailed final settlement agreement. Lee Dec.at ¶ 13. At all times during the settlement process, the Parties negotiated on an arm's-length basis. Lee Dec. at ¶15. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.

## 2. The Distribution of Class Notice Satisfied Due Process

As 972 of the 1,092 Class Members received the class settlement notice (89%), we believe that the result of the class notice distribution is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that

of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14.  Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen that are likely to inform persons affected).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id.* The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be

eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. Defendants provided a class list of 1,092 Class Members. In plain language that is easily understood by the average person (and was previously approved by this Court), the claims notices set forth essential information, including the background of the action, the terms of the settlement, the plan of allocation of the settlement fund, and the various rights of class members under the settlement (including the right to opt-out, file claim forms, file objections and attend the Fairness Hearing). The Claims Administrator disseminated the class notice to 1,075 Class Members, for whom contact details were provided by Defendants. Although 292 notices were returned as undeliverable without forwarding addresses, the Administrator diligently pursued obtaining alternate addresses for such Class Members and was able to locate 198 updated addresses, which it used to re-mail those notices, 180 of which were successfully delivered. Therefore, the Administrator successfully notified 972 of the 1,092 Class Members, for a total deliverable rate of approximately 89%. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

## III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23,

collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶¶ 12. During the litigation, counsel highly experienced in wage and hour law represented Plaintiffs and Defendants.

As of December 2, 2021, the deadline for class members to object to or opt-out of the settlement, no individual has objected to the settlement or chosen to opt out. Lee Dec. ¶¶ 20-21.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: December 22, 2021

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*